STANLEY GRABOYES *et ux. vs.* MORRIS SHATZ.

DECEMBER 10, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is an action of trespass and ejectment for the possession of a tenement held by the defendant under an oral letting from month to month by the plaintiffs' grantor Morris Bezan. The case was tried before a justice of the superior court sitting without a jury and resulted in a decision for the plaintiffs. It is here on de-

fendant's bill of exceptions containing, however, only his single exception to that decision.

Defendant contends that the decision is erroneous for the following reasons: first, plaintiffs did not prove that they in good faith sought possession of the tenement for their own personal use as is required by the Emergency Price Control Act of 1942; second, they did not give him a valid notice in writing to quit because they served him with a copy instead of the original; and, third, the notice which they gave was not binding because it was given at a time when the relation of landlord and tenant between plaintiffs and defendant did not exist.

The trial justice expressly found that the plaintiffs had proved their good faith, and he ruled that the notice which was served was an original and not a copy, and therefore was valid. The third point was not presented to him and he made no express ruling thereon. It is, however, implicit in his decision that the defendant was a tenant of some kind and hence entitled to a notice to quit before plaintiffs could properly proceed against him in trespass and eject-ment. We shall, therefore, consider all of defendant's con-tentions here.

The first point necessarily involves a consideration of the evidence upon which the trial justice based his finding. The transcript shows that on October 11, 1947 plaintiffs caused to be served upon defendant a notice to quit the third floor tenement of a certain house at 27 Ayrault street in the city of Providence on or before November 1, 1947. The notice stated that the plaintiffs had purchased the house and desired to occupy such tenement. It appeared from the evidence that Morris Bezan had conveyed the title to the plaintiffs on October 10, 1947 in consideration of $4000 in cash and their assumption of an existing mort-gage in the sum of $5000. Bezan is the father of plaintiff Corene Graboyes and the father-in-law of plaintiff Stanley Graboyes.

After purchasing the house, the Graboyes, who lived in Philadelphia, moved to Providence and resided with Morris Bezan. In the meantime they stored their furniture in a Providence warehouse until they could obtain possession of the tenement. Each testified that they had paid cash to Morris Bezan for the deed to the premises and that since October 1947 they had made several payments on the mortgage. Each also testified that they wanted to occupy the third floor as their home. Their testimony was neither contradicted nor impeached.

Defendant, nevertheless, on those facts argued to the trial justice that the transfer of title was merely colorable and that in seeking the third floor tenement plaintiffs were not acting in good faith. He based his argument on the fact that the same attorney who acted for the plaintiffs in sending their notice to quit had, on September 8, 1947, sent a similar notice on Bezan's behalf notifying defendant to quit on or before October 1, 1947. Bezan had invalidated the notice by collecting rent for that month from defendant. The trial justice rejected defendant's contention and pointed out that in order to obtain the tenement it was not necessary for Bezan to resort to a colorable transfer of his title on October 10, 1947 as at that time he could have given defendant another notice to quit on November 1, 1947. Defendant now argues to this court that the trial justice erred in finding on such evidence that plaintiffs had proved their good faith in seeking his tenement.

Good faith, as required by the Emergency Price Control Act to support an action of trespass and ejectment, is a question of fact to be found by the jury or, as in the case at bar, by the trial justice sitting without a jury. Such a finding, we have held, will not be disturbed by this court unless it is clearly wrong. *Corcione* v. *Carrera*, 71 R. I. 435. From our perusal of the transcript we have found nothing that would justify us in holding that the trial justice's finding here is clearly wrong, and therefore we cannot disturb it.

The next point concerns the validity of the notice to quit. It is conceded that the notice which was served upon defendant was a carbon duplicate of the original that was retained by plaintiffs' counsel. The constable who served the notice made his return of service on the original. Both the original and duplicate, however, were identical in every respect including the actual signature of the attorney for the plaintiffs. Nevertheless because the constable testified on cross-examination that the notice which he had served was a "copy" the defendant contends that the notice was not in compliance with the law as laid down in *Mathewson* v. *Thompson,* 12 R. I. 288.

In that case this court said that the service of a copy of the original notice on the tenant did not comply with the statute which it was held required an original notice. The distinction between the notice held invalid there and the one in the case at bar is that the notice here is really an original because it is one of two precisely identical notices which were actually signed in duplicate by the attorney for the plaintiffs. The fact that the one served upon defendant was a duplicate does not of itself stamp it as a copy such as was disapproved in the *Mathewson* case, so long as it was actually signed for the plaintiffs by their attorney, and was not merely attested by the serving officer as signed. In our opinion the trial justice quite properly ruled that the notice which had been served on the defendant was in law an original notice and was in that respect valid.

The third point is technical but nevertheless of importance because, unless in some way the relation of landlord and tenant arose between plaintiffs and defendant after the transfer of title to them by Bezan, notice to quit from them would not be binding on defendant. The latter contends that plaintiffs never became his landlords because they refused to accept rent from him when he offered it to them, and because they demanded the tenement at the end of his tenancy under the letting from Bezan. He further

contends that Bezan was his landlord and that only he could give him a valid notice to quit on November 1, 1947. In support of the principle of law underlying those contentions he cites the following cases: *Comstock* v. *Cavanagh,* 17 R. I. 233; *Maher* v. *James Hanley Brewing Co.,* 23 R. I. 343; *Noorigian* v. *Greenfield,* 52 R. I. 33; *Dewey* v. *Clark,* D.C., 61 A.2d 475.

The facts in none of the cited cases are quite like those in the case at bar. In the *Dewey* case they are so clearly different that we need not discuss them. It is sufficient to say that, in our opinion, that case is not in point on the precise question with which we are confronted here. The other cases may be considered for what light, if any, they may throw on the right of a purchaser of the reversion to recover possession from a tenant who holds under a prior letting from the plaintiffs' grantor.

In *Comstock* v. *Cavanagh, supra,* there was no sale of the reversion but merely a lease to the plaintiff subject to a prior letting to the defendant. Plaintiff gave defendant notice to quit at the end of his letting. Defendant ignored the notice, refused to pay rent or attorn to the plaintiff, and contended that he was entitled to a notice from the owner of the premises who rented them to him. The trial court so held. On exceptions to this court that holding was sustained because the plaintiff lessee, since he could make no entry pending the letting, acquired no estate in the land during the continuance of the letting, unless by attornment of the tenant under such prior letting, and so without attornment no interest in the reversion passed to the plaintiff under the lease such as would qualify him with the right and authority to give defendant notice to quit. This summary shows that such is not the case now before us. Here plaintiffs were more than lessees out of possession; they were holders of the reversion and as such were vested with all the rights of their grantor.

*Maher* v. *James Hanley Brewing Co., supra,* is likewise of no help here as the fundamental facts were similar to

those in *Comstock* v. *Cavanagh, supra,* and this court held that that case ruled the case before it. *Noorigian* v. *Greenfield, supra,* is more nearly in point on some of its facts, although not entirely so. There the court held that a tenant of a prior owner who had no knowledge that title had passed to another by reason of the foreclosure of a mortgage was not obligated to quit on notice in writing from such new owner. It is clear from a reading of the court's opinion that the failure of plaintiff to notify defendant of the change of title was the deciding factor in leading the court to hold that the notice was defective. Apparently no claim was made in that case, as is made by defendant in the case at bar, that plaintiff as the new owner did not have authority to give a proper notice to quit before the end of the prior letting. In its opinion the court said that the sufficiency of the notice "is the sole question raised by the bill of exceptions." And the court commented: "The notice conveyed no information to the tenant that it emanated from his landlord.".

In the case before us defendant had ample notice of the transfer of Bezan's title to the plaintiffs. In September Mrs. Graboyes called on the defendant and told him that she was buying the house and wanted his tenement. The notice to quit further informed defendant that she and her husband had actually purchased the house. Hence the dominating factor in the *Noorigian* case is clearly missing. Thus the question here is solely whether the purchasers of the reversion subject to the prior letting are as qualified as their grantor to notify the defendant to quit at the end of his letting. We are of the opinion that such purchasers are so qualified.

Defendant is mistaken in his contention that plaintiffs could not lawfully initiate trespass and ejectment proceedings before the expiration of his tenancy under the letting by Bezan. After collecting rent for the month of October, Bezan, as owner of the premises, at any time thereafter, up to the date of his conveyance to plaintiffs on Octo-

ber 10, 1947, could have taken the first step to recover possession of the tenement by giving defendant a notice in writing to quit on or before November 1, 1947. Had Bezan done so and then conveyed to the plaintiffs they would have been entitled to bring an action of trespass and ejectment against defendant based upon that notice. *Rhode Island Marine Transp. Co.* v. *Interstate Navigation Co.,* 52 R. I. 143. This court so held by virtue of the comprehensive provisions of general laws 1923, chapter 297, sec. 11, now G. L. 1938, chap. 435, §10, which make a grantor's conveyance in proper form operative to convey to the grantee "all the possession, estate, title and interest, claim, demand or right of entry or action, of the grantor, absolutely in and to the land conveyed * * *."

We similarly applied that statute to a case where the grantee of the reversion, without giving a notice in writing to quit, brought trespass and ejectment against a tenant of the grantor, who was more than fifteen days in arrears of rent at the time of the conveyance. *North Smithfield Volunteer Fire Dept.* v. *Kollet,* 70 R. I. 182. In that case we said that the grantor had a right to re-enter without notice for defendant lessee's nonpayment of rent and that, by virtue of the above statute, such right passed to the grantee under the grantor's conveyance.

There can be no question, therefore, that the grantees here acquired under their grantor's conveyance his right to re-enter or bring an action for recovery of possession of the tenement from the defendant. The preliminary step which was necessary for the enforcement of such right against the defendant was the giving to him of a notice in writing to quit. Plaintiffs gave such notice and informed defendant of their purchase of the reversion. It was thereupon defendant's duty to comply with such notice or become a trespasser and subject himself to an action of trespass and ejectment. Hence the trial justice did not err in finding that plaintiffs were entitled to possession.

The defendant's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Bernard B. Abedon,* for plaintiffs.

*Frank H. Bellin,* for defendant.